The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Alan CLEMENTS, Defendant-Appellee.

No. 82SA570.

Supreme Court of Colorado.

March 28, 1983.

---

Alexander M. Hunter, Dist. Atty., Twentieth Judicial Dist., Ann B. Stone, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

Richard D. Irvin, Boulder, for defendant-appellee.

ERICKSON, Justice.

The district attorney, pursuant to C.A.R. 4.1 and section 16–12–102, C.R.S.1973 (1978 Repl.Vol. 8), prosecuted an interlocutory appeal from an order suppressing a confession and physical evidence which were essential to prove the commission of drug-related crimes by Alan D. Clements. Clements was charged with unlawful possession, distribution, and manufacture of amphetamines and methamphetamines, in violation of section 18–18–105, C.R.S.1973 (1982 Supp.). Following an extended hearing on motions to suppress the evidence the district court suppressed the confession which the defendant made after having been given the *Miranda* warning, and the evidence which was seized when the defendant's car was searched on July 17, 1982. We reverse the suppression orders in part and remand for further proceedings not inconsistent with this opinion.

I.

On the evening of July 16, 1982, officer Thomas Deland of the Broomfield Police Department was on bicycle patrol in Broomfield, Colorado. As he approached an apartment building he noticed the defendant standing behind a green Chevrolet automobile. He then saw the defendant put something in the trunk, look at him,

slam the trunk closed, and enter the apartment building.

The officer recognized the defendant from previous police contacts and knew that the defendant had a history of manufacturing narcotics, particularly amphetamines. As the officer rode his bicycle by the defendant's automobile, he detected a strong odor of ether coming from the trunk of the automobile. He radioed for backup assistance and, after learning that the automobile belonged to the defendant, entered the apartment house to contact the defendant.

When Officer Deland located the defendant, he advised him that he had received information that the defendant had a lab for manufacturing drugs in the trunk of the car. The defendant denied the accusation. Deland then advised the defendant of his *Miranda* rights. He waived his rights and agreed to talk to the officer. The defendant admitted that the vehicle was his, but denied that any ether was in the car. He also told Deland that he was the only one who drove the car. The officer told the defendant that the odor was so strong that it made his eyes water and that he wanted to search the vehicle for ether. The defendant, who appeared nervous, then told the officer that he wanted to talk to his lawyer before granting consent to search the vehicle. The officer ceased the questioning and left the apartment. The defendant agreed to return to the vehicle after he talked to his lawyer. He never returned.

Not long after that conversation, another person came by the parking lot and attempted to move the car. The officer refused to allow the car to be moved and procured the car keys from the individual that the defendant had sent to claim the car. Using the car keys, the police opened the trunk and found ether together with lab equipment and other chemicals that could be used in the manufacture of narcotics. The ether was found in a glass whiskey bottle stored in a footlocker. Officer Deland sealed the bottle of ether and then closed the trunk. Officer Deland's search of the trunk was directed solely towards "neutralizing" the ether. He ignored several closed suitcases and instead focused his search on where the ether odor was the strongest. He did not perform a general exploratory search of the trunk or car interior. The back-up officers present at the time also noticed the ether odor and lab equipment. Under the supervision of the West Adams County Fire Department, the car was towed to Broomfield's impoundment lot.

Four of the police officers who worked on this case were familiar with hazardous materials—particularly the odor and properties of diethyl ether. Officer Murray, who was Deland's backup officer, had been employed by a chemical company before joining the Broomfield Police and had working knowledge of the manufacturing process of amphetamines and the dangerous properties of ether. Officer Brewer, of the West Adams County Fire Department, had special police training in handling hazardous materials. In addition, expert testimony in the record established that diethyl ether forms peroxides when it is allowed to stand. The peroxides are unstable and can cause spontaneous combustion. All of the expert testimony pointed to the highly explosive properties of diethyl ether and to its easily identifiable smell. The testimony supports the conclusions which the police reached that night.

When Officer Deland first detected the ether, the defendant's car was parked less than twenty feet from an apartment complex. The ether was situated above the gas tank of the car and posed a substantial threat to public safety. One expert testified that the ether was a "time bomb" waiting to explode. Officer Murray testified that the situation was "scary" in view of the possibility of an unexpected detonation of the ether.

Officer Deland had intended to obtain a search warrant the following Monday (the car was impounded Friday night). When he was told by a fellow officer that the ether still posed a danger, Deland decided to perform the search on Saturday. A war-

rant was obtained and the search completed under the supervision of fire department officials and an expert on hazardous materials from the University of Colorado.

The search of the vehicle produced the items that had been observed when the search for ether was undertaken by Officer Deland. In addition, controlled substances were found in the glove compartment of the vehicle. Other chemicals, chemistry equipment, and "cookbooks" which outlined procedures for manufacturing drugs were found in the trunk.

After the search was completed, the expert on hazardous materials and a fire official recommended that the ether be destroyed to protect the safety of the officers and the public and to avoid an explosion. The outside temperature on both July 16 and July 17 was sufficiently high to cause the ether to vaporize and become even more unstable. The fire officials also recommended that the other chemicals—hydrochloric acid, propane, and gasoline—be destroyed, and they were burned at the site of the search.

Following the search of the defendant's car pursuant to the warrant, an arrest warrant was issued for the defendant. On July 29, 1982, the defendant was arrested in Dacono, Colorado, again advised of his *Miranda* rights, and transported back to Broomfield. Clements waived his rights and told Officer Deland that he had manufactured amphetamines five or six times in the last eleven months and that during that time he had kept some of the finished product for his own personal use, given some of it away, and sold some of it in the form of dime bags for ten dollars apiece. He told the officer that the drugs had been manufactured at a residence in Broomfield, at a local reservoir, and at other places in the area. In short, he capsulized his manufacturing operation by saying, "where haven't I made it."

Following his arrest, the defendant filed a motion to suppress, asserting that the evidence that was obtained on July 17 was intentionally destroyed by the police prior to the time that he had an opportunity independently to test the chemicals that were allegedly used to manufacture amphetamines and methamphetamines. He also claimed that the search was without probable cause and that the seizure of the drugs violated rights guaranteed to him by the Fourth Amendment to the United States Constitution and by Art. II, sec. 7 of the Colorado Constitution. Lastly, he claimed that his confession was the fruit of an illegal arrest and therefore should be suppressed.

## II.

The trial court suppressed all evidence relating to the seizure of the chemicals and the subsequent arrest. The court concluded that the officers "used the potential emergency as a pretext for entering the trunk"; and that the police could have alleviated the situation in a less intrusive manner, presumably allowing the defendant or his friends to move the car to a more desolate location. Since the police acted unreasonably by entering the trunk, the evidence was "not inadvertently" obtained and therefore was not in plain view and must be suppressed. The court then held that probable cause to search the rest of the car and to arrest the defendant were derivative products of the illegal trunk search. Thus, the court suppressed the defendant's confession in addition to the physical evidence.

The propriety of the district court's suppression orders depends on whether the police acted legitimately when entering the defendant's car trunk. We have held that warrantless searches are presumptively invalid and that the burden is on the prosecution to establish an exception to the warrant requirement. *People v. Draper,* 196 Colo. 450, 586 P.2d 231 (1978); *People v. Amato,* 193 Colo. 57, 562 P.2d 422 (1977). A warrantless seizure of an item in plain view is permitted if the police are validly on the premises. Similarly, evidence validly seized pursuant to the plain view exception may form the basis for probable cause to obtain a search or an arrest warrant. *People v. Stoppel,* 637 P.2d 384 (Colo. 1981); *People v. Gurule,* 196 Colo. 562, 593 P.2d 319 (1978).

A warrantless search of the defendant's car trunk may be proper if exigent circumstances existed which justified the intrusion. We have held that a bona fide public emergency is a variant of the exigent circumstances exception to the warrant requirement. *People v. Amato, supra; People v. Boorem,* 184 Colo. 233, 519 P.2d 939 (1974). In *Amato,* we cited several factors relevant to whether the emergency doctrine can be invoked: (1) the degree of urgency or necessity in acting without first obtaining a warrant; (2) the time needed to get a warrant; (3) a reasonable belief that contraband would be removed or destroyed; and (4) the possibility of danger to police guarding contraband while the warrant is being obtained. 193 Colo. at 60, 562 P.2d at 424. With those factors in mind, the court in *Amato* held that "obtaining evidence or seizing contraband under the emergency doctrine must involve an immediate crisis and the probability that [police] assistance will be helpful." *Id.*

We recently held in *McCall v. People,* 623 P.2d 397 (Colo.1981), that the emergency doctrine will be invoked if there exists a factual situation which supports a "colorable claim of emergency threatening the life or safety of another." The emergency doctrine must be "strictly circumscribed by the exigencies which justify the initiation [of the search]." *Id.* at 402 (quoting *Terry v. Ohio,* 392 U.S. 1, 4, 25–26, 88 S.Ct. 1868, 1871, 1882, 20 L.Ed.2d 889 (1968)).

Here, the trial court explicitly found that an immediate crisis did exist, that there was a colorable claim of emergency threatening the life or safety of the people in the vicinity of the automobile, and that police assistance would be helpful in dealing with the crisis. Nevertheless, and in our view inconsistently with its findings, the court concluded that the police acted unreasonably by entering the trunk and attempting to eliminate the danger.

Testimony in the record established that Officer Deland, Officer Brewer, and Officer Murray were aware of the instability of ether and its potential for unexpectedly exploding. The odor of the ether was so strong that one officer testified that he could smell it nearly seventy-five feet away from the car. The car was parked near an apartment building and a number of spectators had gathered to watch the investigation. The incident occurred on a hot July evening. The ether was kept in an old whiskey bottle with no markings. The police later discovered during the search that the ether was situated above the gas tank. Expert testimony at the hearing established that ether could explode for a number of reasons, some of which include minor jostling, heat, sparks, and radio transmissions.

■ In our view, the record amply supports the trial court's finding of an emergency. The police officers in this case acted reasonably and competently in dealing with a potentially serious public safety hazard. The car was, as one expert testified, a "time bomb" waiting to explode. The police would have been derelict in permitting the defendant or his friends to move the car or to enter the trunk. Under the circumstances, the police acted properly by opening the trunk in an attempt to neutralize the danger. Furthermore, the search was narrowly focused on discovering and eliminating the public danger. They then acted responsibly in having the car towed to an isolated police impoundment lot. In retrospect, the police were in danger while the car was being towed to the impoundment lot even though the ether in the trunk was solidly capped. Under the circumstances, it would not have been unreasonable for the Broomfield police to call a bomb squad to deal with the situation from the beginning.[1]

---

1. Although the trial court concluded that there was an emergency situation which called for police intervention, it ruled that the officers' actions were nevertheless constitutionally invalid because they could have taken less intrusive action but instead "used the potential emergency situation as a pretext for entering the trunk of Defendant's car." The evidence did not indicate, however, that there was a safe, feasible, and less intrusive alternative reasonably available to the officers. We also note that the evidence indicates that the officers, at the time entry was made, reasonably thought that tightly securing the cap on the bottle of

Despite its finding of an "immediate crisis," the trial court ruled that the evidence seized or observed in plain view must be suppressed. The court concluded that the "inadvertence requirement" of the plain view doctrine, *People v. Stoppel*, 637 P.2d 384 (Colo.1981), was not met because the police officer had reason to believe that he would find contraband in the trunk.

■ We have held that for the plain view doctrine to apply, a police officer must have a "prior justification for an intrusion in the course of which he [comes] inadvertently across the piece of evidence incriminating the accused." *People v. Franklin,* 640 P.2d 226, 229 (Colo.1982) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–2038, 29 L.Ed.2d 564 (1971)). The police may seize incriminating evidence in plain view if they have "present knowledge of facts which establish a reasonable nexus between the article to be seized ... and criminal behavior; the criminal behavior, however, need not relate to the criminal activity which gave rise to the issuance of the warrant [or justifiable intrusion]." *Id.* at 230 (footnote omitted).

■ The emergency in this case justified the intrusion into the defendant's car trunk. The fact that Officer Deland may have suspected that the defendant was engaged in criminal activity does not vitiate his legitimate response to a public safety emergency. In *People v. Stoppel,* 637 P.2d 384 (Colo.1981), the defendant claimed that a search warrant obtained for drugs was a subterfuge for a general exploratory search of the defendant's house for items related to suspected bombings. We held that the officers' suspicions that bombing-related items might be found did not violate the inadvertence requirement of the plain view seizure. We said that the inadvertence requirement is met "so long as the police do not have *probable cause* to believe the evidence in plain view would be present, and the evidence is observed in the course of an otherwise justifiable search." *Id.* at 390

(emphasis added). Here, Officer Deland did not have probable cause to believe that he would find anything in the defendant's trunk other than ether, the possession of which is not illegal. Since the police did not have probable cause to search the trunk, incriminating items in plain view observed while dealing with the emergency could serve as the basis for search and arrest warrants without violating the inadvertence requirement.

Accordingly, the district court's order suppressing all items seized from the automobile and the confession obtained as a result of the defendant's subsequent arrest was improper. In our view, the search and confession were not tainted by illegal police conduct and the evidence should not have been suppressed.

### III.

■ The district court also held that evidence relating to the chemicals destroyed by the police must be suppressed under the test of *People v. Hedrick,* 192 Colo. 37, 557 P.2d 378 (1976), as modified by *Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979). The destruction of evidence test has three prongs:

1. whether the evidence was suppressed or destroyed by the prosecution;

2. whether the evidence is exculpatory; and

3. whether the evidence is material to the defendant's case.

*See also People v. Holloway,* 649 P.2d 318 (Colo.1982); *People v. Garries,* 645 P.2d 1306 (1982); *People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980); *People v. Gomez,* 198 Colo. 105, 596 P.2d 1192 (1979). If the defendant's due process rights have been violated by the destruction of evidence, the trial court may fashion an appropriate remedy to protect the defendant's rights and deter police misconduct. *People v. Morgan, supra.*

---

ether was sufficient to avert any danger. This is not a case where the officers' actions to abate the emergency revealed a mere desire to

search rather than a desire to secure the public safety.

■ In the present case, the trial court concluded that all three prongs of the test were met. Obviously, the police destroyed the ether, propane, gasoline, and hydrochloric acid. Second, the trial court found that the defendant established that the chemicals were "not merely incidental" to his theory of defense. *People v. Morgan, supra.* Third, the finding was made that the evidence was relevant to the defense theory of misidentification of the chemicals and was therefore material. While a defense that denies the very existence of easily identifiable chemicals strains credibility, we believe that the defendant is entitled to any reasonable theory of defense that involves production of exculpatory evidence. Therefore, the police should have avoided destruction of the evidence without first allowing the defense an opportunity to make relevant tests or should have fashioned other procedures for preserving evidence which we outlined in *People v. Gomez, supra.*

This case, however, raises the issue of police responsibilities in preserving dangerous substances which may be evidence in a criminal case. We agree that the propane, gasoline, and hydrochloric acid could have been preserved for the defendant's inspection. These chemicals could have been safely and easily stored by the police as a part of regular practices to preserve evidence for trial.

The ether raises different considerations. We said in *Garcia v. District Court, supra,* that the state should collect and preserve evidence "when those acts can be accomplished as a mere incident to a procedure routinely performed by state agents" and that the state "should employ regular procedures to preserve evidence" which might be helpful to the accused. 197 Colo. at 46, 589 P.2d at 929–30. Moreover, we have held that even the good faith destruction of evidence by the police or prosecution will not excuse the misconduct. *People v. Garries,* 645 P.2d 1306 (1982).

■ We believe, however, that the destruction of evidence rule cannot be applied mechanically in a way that endangers the lives of public safety officers or forces the police to preserve hazardous substances which cannot be stored safely. The purpose of the destruction of evidence rule is to protect the integrity of the truth-finding process and to deter police misconduct. *Id.* at 1308. Neither of these policies is furthered by a rule that unnecessarily exposes the police to the dangers of chemical explosions. In this case, there is little doubt that the substance in the whiskey bottle was positively identified as ether by virtue of its distinctive odor (recognized by three trained officers and an expert on hazardous materials) and the explosion which occurred during its disposal. Additionally, it cannot be seriously argued that police misconduct occurred. The Broomfield police exhibited continuous concern for the rights of the defendant and the needs of public safety. Only after the recommendation of the city fire officials and an expert in hazardous materials did the police dispose of the chemicals.[2] We will not impose on the prosecution a duty to preserve high explosives, homemade bombs or dangerous materials if that requirement would endanger lives and the public safety.

We therefore conclude that the trial court's suppression order was unnecessarily broad. In our view, under the circumstances of this case, the court could properly have suppressed the contents of the containers holding propane, gasoline, and hydrochloric acid. The evidence pertaining to the ether, however, should not have been suppressed.

Accordingly, we reverse the district court's suppression orders and remand to the district court for further proceedings consistent with the directions set forth in this opinion.

NEIGHBORS, J., does not participate.

**2.** The prosecution's expert testified that ether can deteriorate rapidly and unexpectedly. While the expert recommended destruction of the chemical in any event, he also urged the police to avoid transporting the ether without a specially constructed vehicle designed for that purpose. He also testified that ether should only be stored in a special container placed in a reinforced refrigerator designed to hold explosives.