See also, 790 P.2d 804.

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Ricky Dean SAATHOFF,
Defendant–Appellant.**

**No. 88CA1017.**

Colorado Court of Appeals,
Div. II.

March 26, 1992.

As Modified on Denial of Rehearing
April 30, 1992.

Certiorari Denied Oct. 13, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Cheryl A. Linden, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, and Thomas M. Van Cleve, III, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge NEY.

Defendant, Ricky Dean Saathoff, appeals the judgment of conviction based on a jury verdict finding him guilty of first degree murder and first degree sexual assault. We affirm.

## I.

Defendant first contends that he has been denied his constitutional right to appeal because this court denied him the right to supplement and correct the record. We disagree.

Section 16–12–101, C.R.S. (1986 Repl.Vol. 8A) provides that one convicted of an offense has the right to appeal. However, it is an appellant's responsibility to designate an adequate appellate record and to ensure its proper transmission to the

appellate court. C.A.R. 10 & 11; *People v. Velarde,* 200 Colo. 374, 616 P.2d 104 (1980).

C.A.R. 11 provides for ninety days from the filing of the notice of appeal to the transmission of a certified record on appeal unless that time is shortened or extended.

Opening briefs are to be submitted within forty days after the record is filed with the court of appeals. C.A.R. 31(a). Upon a showing of good cause, the court may extend the time for filing an opening brief. C.A.R. 26(b).

Here, the notice of appeal was filed on July 8, 1988 and therefore, pursuant to C.A.R. 31(a), the record was due on October 6, 1988. Between October 6, 1988, and October 5, 1989 defendant requested, and was granted four extensions of time to transmit the record because the reporter's transcript was not completed. The record was filed on October 5, 1989.

Pursuant to C.A.R. 31(a), an opening brief must be submitted within forty days after the record is filed with the court of appeals. Between November 14, 1989, and December 21, 1990 defendant requested and was granted eight extensions of time to file the opening brief on the basis of defense counsel's heavy caseload.

On December 21, 1990, defendant filed a request for reconsideration of an order of no further extensions of time within which to file an opening brief. As a basis for this request, defendant again cited counsel's heavy caseload and the length of the record. This motion was denied.

Also, on December 21, 1990, defendant filed, for the first time, a request to supplement the record on appeal by the inclusion of "the transcript of the hearing held on December 8, 1987 (including the testimony of Debra Mogard which may have been given on December 4, 1987), and all other hearings on motions held prior to and during trial which have not been included in the record on appeal,...." The grounds for defendant's request was stated in general terms that failed to demonstrate how supplementing the record would assist him or the court in considering the appeal. Furthermore, the motion failed to explain why the asserted deficiencies in the record

had not been noticed during the preceding 14 months that the record had been available to counsel. Defendant's request was denied.

On January 9, 1991, defendant filed a request that a three judge panel reconsider the order of no further extensions within which to file his opening brief and also the denial of his request to supplement the record. Those requests were denied by a three judge panel of this court.

On April 25, 1991, defendant filed a motion requesting permission to file an opening brief out of time, which was granted. He also moved to file an opening brief in excess of the thirty page limit as provided by C.A.R. 28(g) which was also granted. Also on April 25, 1991 defendant made a request for limited remand for correction of the record alleging typographical errors in the original record. This motion included a sample page of the record as illustrative of the typographical deficiencies the defendant claimed existed in the original record. On May 8, 1991, this motion was denied based on the typographical errors indicated on the sample with leave to reconsider the motion upon a showing of specific inaccuracies.

Two months later, on July 11, 1991, defendant filed a request for reconsideration of his request for a limited remand for correction of the record citing two instances of typographical errors in scientific expert testimony. This motion was denied by a three judge panel on July 18, 1991.

The right to appeal does not give a party the right to abuse the appellate process. We conclude that under the facts here, defendant was not denied his right to a direct appeal by this court's denial of his motions to supplement and correct the record.

## II.

■ Defendant next contends that the trial court improperly permitted the People's expert witness to testify about multisystem electrophoresis blood testing. We disagree.

For many years, admissibility of evidence emanating from a new scientific technique was determined by the application of the standard announced in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). *People v. Anderson*, 637 P.2d 354 (Colo.1981). The *Frye* test requires courts to determine if the scientific basis of an opinion is founded on "well-recognized scientific principle or discovery [which has] gained general acceptance in the particular field in which it belongs."

Here, a forensic serologist was qualified and testified as an expert. She testified that forensic serology is the study of blood and other body fluids, primarily in dried states, in matters that pertain to criminal cases. Electrophoresis is a technique used to separate proteins—such as those found in blood—according to their electrical charge. This is done by passing a current across a gelled plate that contains a blood sample. Various proteins are separated across the plate according to their electrical charge and are visualized in banding patterns on that plate.

The forensic serologist stated that multi-system electrophoresis, the technique used here, was widely accepted in the scientific community as a reliable method to type blood. She opined that possible contamination would be seen in the gel used in the testing and that even significant contamination would not cause a misreading in the hands of an experienced examiner. And, she reported that she did not get any distortion of the band patterns on any of the unknown samples used here.

Also, the record reveals no evidence that the serologist failed to follow the procedures accepted by the scientific community. In fact, the evidence demonstrates that proper procedures and protocol were utilized.

Basing her opinion on the results of the electrophoretic tests she had performed, the expert stated that the blood found on defendant's clothing was of a type consistent with that of the victim.

Several states have found the multi-system electrophoresis testing to be reliable and, therefore, admissible. *State v. Wash-*ington, 229 Kan. 47, 622 P.2d 986 (1981); *Commonwealth v. Gomes*, 403 Mass. 258, 526 N.E.2d 1270 (1988); *State v. Foote*, 791 S.W.2d 879 (Mo.App.1990); *Santillanes v. State*, 104 Nev. 699, 765 P.2d 1147 (1988); *Plunkett v. State*, 719 P.2d 834 (Okl.Cr. 1986).

Our review of the testimony presented at both the pretrial evidentiary hearing and the trial reveals that there was sufficient evidence presented concerning the test's acceptance and reliability in the scientific community.

We, therefore, conclude that the trial court did not err in admitting the evidence related to electrophoresis.

### III.

■ Defendant next asserts that the People's testing resulted in the bloodstain found on defendant's ski overalls being rendered unsuitable for independent testing and that, therefore, the trial court erred in failing to suppress the results of the People's testing. We are not persuaded.

All of the evidence was not destroyed by the prosecution's forensic serologist. In fact, the serologist avoided performing a specific test to prevent destruction of evidence. Moreover, the test results were preserved by photographs.

There is no indication in the record that the evidence was exculpatory. The contrary is true. Also, that the prosecution informed the defense when its serologist was to perform her testing. However, defendant did not choose to have his expert present.

The murder occurred January 18, 1987. The People's testing was completed February 19, 1987. Defendant requested the ski overalls obtained from defendant which were bloodstained, in December 1987. Also, he did not request the prosecution preserve the bloodstain by freezing the overalls, and police testimony indicated that they did not normally freeze that type of evidence.

Therefore, we conclude that the trial court did not err in admitting the evidence related to the bloodstain. *See People v. Clements,* 661 P.2d 267 (Colo.1983).

## IV.

Defendant further contends that the trial court erred in allowing a detective to testify about statements that defendant made during his interrogation. We agree that some of the statements were not relevant and therefore, should not have been admitted; however, the error was harmless.

### A.

■ Defendant first claims that the trial court erred by allowing a police officer to testify that defendant indicated that he wanted to end the conversation. We disagree.

The facts here are similar to those in *United States v. Mitchell,* 558 F.2d 1332 (8th Cir.1977), in which testimony about defendant's silence was held admissible where defendant had waived his rights, had given inculpatory statements, and, when faced with evidence contradicting his statement, remained silent. Here, as in *Mitchell,* defendant waived his *Miranda* rights, and when confronted with the fact that his story contained discrepancies, he became silent. The police officer testified that defendant spoke, then was silent, and then again began to speak. We perceive no error here. *See United States v. Mitchell, supra.*

### B.

■ Defendant next asserts that the trial court erred in allowing a detective to testify that defendant told him that the only time he might kill would be in a circumstance when a black man approached him and asked for sexual favors and tried to force himself on him. Although we agree with defendant's assertion that the trial court erred in admitting this testimony because it was irrelevant, we find the error harmless.

A defendant is entitled to a fair trial, not a perfect trial. *People v. Barker,* 180 Colo.

28, 501 P.2d 1041 (1972). Errors occurring during a criminal trial will be regarded as harmless if they do not adversely affect the substantial rights of the accused. *People v. Taylor,* 197 Colo. 161, 591 P.2d 1017 (1979). Crim.P. 52(a).

We find no probative value or relevance in the police officer's testimony and therefore it should not have been admitted but conclude its admission was harmless. *People v. Taylor, supra.*

## V.

■ Defendant next contends that the trial court erred in admitting testimony that defendant had offered to give marihuana to people at a bar in return for buying him a beer. We disagree.

A witness testified:

We sat down and he [defendant] came over and we bought him a beer and that. He went and visited a few other people, and then he came back and wanted us to buy him another beer. We were kind of hesitant, and he said he would give us a joint if we did. So, we bought him one more beer.

Defense counsel did not object to the statements during the witness' testimony. In fact, a few questions later, it was the trial court that asked counsel to approach the bench and asked defendant's counsel if he wished a cautionary instruction. However, defendant asked for a hearing. The court denied defendant's request for a hearing and again asked counsel if he wanted an instruction. Defendant declined.

After the witness' testimony, defendant moved for a mistrial which was denied. Once again, the court asked defendant if he wanted an instruction. Again, defendant declined.

■ The trial court has broad discretion to grant or deny the drastic remedy of a mistrial, and its decision will not be disturbed on appeal absent gross abuse of discretion and prejudice to the defendant. A mistrial is warranted only if the prejudice to the accused is too substantial to be

remedied by other means. *People v. Abbott,* 690 P.2d 1263 (Colo.1984).

Under the circumstances presented here, we conclude that the trial court did not err in admitting the testimony and in refusing to grant a mistrial. *See People v. Collins,* 730 P.2d 293 (Colo.1986).

## VI.

■ Defendant next asserts that the trial court erred in denying his motions for a continuance to obtain the presence of two expert witnesses. We disagree.

■ A trial court's ruling on a motion to continue is a matter within its sound discretion, and unless a clear abuse of discretion is shown, its decision will stand undisturbed on appellate review. *People v. Crow,* 789 P.2d 1104 (Colo.1990).

An abuse of discretion occurs if the court, based on the particular circumstances, founded its ruling on manifestly arbitrary, unreasonable, or unfair reasoning. *People v. Crow, supra.*

Two weeks after trial began, the defendant discovered that he did not have a complete set of photographs showing the electrophoretic test results. The defendant's expert, who had examined the original partial set of photographs, was unavailable, and defendant sought a continuance until that expert could be shown the previously unavailable photographs. The trial court denied defendant's motion and a different expert examined the newly discovered photos for the defense.

Defendant next moved the trial court to delay the prosecution's expert witness' testimony on blood spatter analysis until his expert on that subject was available to hear it. The court denied this request but gave defendant's expert witness access to a transcript of the testimony of the prosecution's witness. Defendant's blood spatter expert witness ultimately testified.

Considering the totality of the circumstances, we perceive no abuse of discretion in the denial of the motions for continuance. *People v. Wells,* 776 P.2d 386 (Colo. 1989).

## VII.

Defendant finally contends that the trial court erred in refusing to permit surrebuttal testimony to impeach the rebuttal testimony of a prosecution witness. We disagree.

■ Whether to allow surrebuttal testimony lies within the discretion of the trial court. *People v. Brockman,* 699 P.2d 1339 (Colo.1985). We perceive no abuse of the trial court's discretion here.

Judgment affirmed.

DAVIDSON and ROTHENBERG, JJ., concur.