## No. 26418

## The People of the State of Colorado v. Harold M. Billington

(552 P.2d 500)

Decided July 26, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, James W. Wilson, Assistant, Lynne M. Ford, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Mary G. Allen, Deputy, Forrest W. Lewis, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Defendant Harold M. Billington appeals his conviction of second-degree forgery, in violation of 1971 Perm. Supp., C.R.S. 1963, 40-5-103.[1] We affirm the conviction.

Diamond J. Productions was a small film company organized to initially make a film about the town of Cripple Creek, Colorado. Two of its members, Bart Johnson and Don Vickery, were authorized to sign checks on the firm's account, both signatures being required. Defendant, though not a member of the firm, had been writing a script for the film.

After returning from a vacation, Johnson learned that a check written on the account had been returned for insufficient funds. He made

---

[1]Now section 18-5-103, C.R.S. 1973.

immediate inquiry at the local bank and found that eight unauthorized checks totalling $436.97 had been drawn on the account, five payable to Billington, the remaining three to local businesses. All eight bore what appeared to be, but were in fact not, the signatures of Johnson and Vickery. Johnson promptly filed a complaint with the police.

At the time of his arrest, defendant denied any wrongdoing. He gave written consent to the police chief and Don Vickery to enter his hotel room to recover certain papers "that belong to [Vickery] pertaining to [the] show we are producing." Once inside the room, the officer took a bundle of papers which apparently belonged to Vickery and to the company. Among the papers were three check stubs which corresponded to the checks allegedly forged; and also there were some sheets of paper with the letters "B" and "J," and the name "Bart" written on them by defendant. The foregoing items, over objection, were admitted into evidence at trial.

Defendant was charged with eight counts of second-degree forgery. He took the stand in his own defense. He admitted signing Johnson's and Vickery's names on the checks in question, but stated that he had been authorized to do so for business purposes, including a trip to Denver to do some research, payment for a car battery and battery cable, and entertainment. Defendant claimed that Johnson and Vickery had encouraged him to make his imitations of their signatures look as realistic as possible so that jealousies would not arise among other firm members, none of whom had been given like authority to sign Johnson's or Vickery's names to checks. Both Johnson and Vickery, however, denied ever granting any such authority.

Defendant was found guilty on count seven, not guilty on count six, and the jury could not agree on the remaining counts. Count seven related to a check for thirty dollars, made out to the order of defendant, the proceeds of which were spent, according to defendant, for "drinking with friends" after a party at Vickery's residence.

I.

Defendant's first argument for reversal is that the check stubs and sheets of paper taken from his hotel room were erroneously admitted into evidence in violation of his right to be free of unreasonable searches and seizures.

It is clear that no warrant need be obtained in order for police to make a search where consent thereto, in light of the totality of the circumstances, has been freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; *People v. Benner*, 187 Colo. 309, 530 P.2d 964; *Capps v. People*, 162 Colo. 323, 426 P.2d 189. And the burden is on the People to show that valid consent to search was given. *People v. Hancock*, 186 Colo. 30, 525 P.2d 435. However, a defendant may limit the scope of his consent, and when this occurs the police must likewise limit the scope of their search unless they

properly procure a warrant authorizing a broader search. *Honig v. United States*, 208 F.2d 916 (8th Cir. 1953); *People v. Superior Court of Los Angeles*, 10 Cal. App.3d 122, 89 Cal. Rptr. 316; *State v. Johnson*, 71 Wash. 2d 239, 427 P.2d 705.

■ The consent form signed by defendant was limited in scope. It read as follows:

"I Harold Billington do give Chief James D. Lindsey and Don Vickery permission to enter my room at the Palace Hotel and recover scrip (sic) and papers that belong to him pertaining to show we are producing."

At trial, defendant, consistent with the wording of this form, insisted that he never gave anyone permission to search the room generally; and that he told Vickery exactly how the room was designed and where he would find the papers; and that it would be easy to find them.

The record does not support the conclusion that a general search was conducted. Rather, the officer found and took only the bundle of papers to headquarters where they were then examined. It was then discovered that the papers contained the check stubs and sheets of paper in question. Under these circumstances, we find no violation of the consent to search. Upon examination of the papers recovered, in our view, the officer was not required to close his eyes to the incriminating evidence plainly visible to him.

■ It is clear that had the officer made this examination of the papers in the hotel room prior to recovering the script he would, under the plain view rule, have been entitled to seize the check stubs and sheets of paper in question as he came across them. Repeated decisions of the United States Supreme Court and of this court make clear that once legitimately on the premises officers are not required to close their eyes to incriminating evidence plainly visible to them. *See, e.g., Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; *People v. Renfrow*, 172 Colo. 399, 473 P.2d 957.

■ Under the plain view rule, since the officer would have been entitled to seize the check stubs and sheets of paper at the time of the search, we hold that the officer did not act unconstitutionally in making the seizure at a later time, away from the premises, when examining the papers which were properly recovered pursuant to authorization from the defendant. There was no error in admitting those items into evidence.

II.

Defendant next argues that the trial court erred in failing to grant his motion for a continuance in order to assure the availability at trial of one Russell Kern as a defense witness. The motion was made a few days before the scheduled commencement of the trial, and was renewed on the day of trial, March 4, 1974. Defense counsel entered his appearance in the case on November 16, 1973. The record shows that the trial date was initially set for February 25, 1974. This setting was thereafter vacated and

the trial reset for March 4, 1974. Although defendant had approximately four months in which to secure the attendance of this witness, he did not attempt to subpoena him.

The court was faced with a heavy trial schedule and granting the motion could have caused a further postponement of up to three months. Additionally, an offer of proof was made as to the nature of Kern's probable testimony, which was of questionable relevancy and did not concern the events giving rise to the charges against defendant. What contributions, if any, Kern might have been able to make were highly speculative and did not require that the trial court grant the continuance. *See Claxton v. People*, 164 Colo. 283, 434 P.2d 407.

The granting or denial of a motion for a continuance in a criminal proceeding is a matter within the sound discretion of the trial court and, absent an abuse of that discretion, the ruling will not be disturbed. *Miller v. People*, 178 Colo. 397, 497 P.2d 992; *Moore v. People*, 164 Colo. 222, 434 P.2d 132. Defendant has made no showing of such abuse of discretion.

## III.

Defendant's final argument is that the jury's verdicts were inconsistent and could thus not support a judgment of conviction. Defendant argues that the only disputed issue related to defendant's authorization, or lack thereof, to sign the checks, and defendant was authorized either to sign all of them or none of them.

We are not persuaded by this argument. In our view, the verdicts were not inconsistent. The evidence as to each count was different, as separate transactions were involved. The jury could properly have concluded defendant was not guilty of count six, of which he was acquitted, but was guilty of count seven, of which he was convicted.

An essential element of the crime of second-degree forgery is intent to defraud, section 40-5-103(1). Count six involved a check for twenty dollars and seventy cents which was, according to evidence adduced at trial, used to purchase a battery for Vickery's automobile. Since there had been previous testimony by Vickery himself that his car was used in Diamond J.'s business, the jury was entitled to find that there was no intent to defraud with respect to this check.

As to count seven, defendant testified that the check was written in order to buy drinks after a party at Vickery's residence. However, a teller at the bank testified that this check was presented for payment by the Palace Hotel, where defendant was staying. Under these circumstances, the jury could properly have inferred that defendant had lied as to his use of these moneys, and that he had in fact forged the signatures for his own purposes.

Moreover, we note that this contention of error was not preserved in defendant's new trial motion and that in the absence of plain

error (which we do not deem present here) contentions not thus preserved will not be considered as a basis for reversal. *Land v. People*, 171 Colo. 114, 465 P.2d 124.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE ERICKSON do not participate.