**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

**v.**

**Ronald James HARDING and Fayann White, Defendants–Appellees.**

**No. 80SA242.**

Supreme Court of Colorado.

Dec. 15, 1980.

Dale Tooley, Dist. Atty., Second Judicial Dist., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Guy Till, Deputy Dist. Atty., Appellate Division, Denver, for plaintiff–appellant.

J. Gregory Walta, Colorado State Public Defender, Shelley Gilman, Deputy State

## 246

Public Defender, Sherry Seiber, Sp. Deputy State Public Defender, Denver, for defendants–appellees.

LEE, Justice.

The People bring this interlocutory appeal to challenge an order of the district court suppressing certain evidence allegedly seized in violation of defendants' Fourth Amendment rights. We reverse the ruling of the court.

On the morning of October 19, 1979, six police officers, who were having breakfast in a restaurant, were told by a telephone company employee that a dead body was lying in the common hallway of a nearby apartment building. Inside the building, the officers found a body with what appeared to be slash marks in the throat. A trail of blood and bloody fingerprints led to the door of apartment No. 24.

The officers knocked on the door and announced that they were police officers. The door opened and defendant, Ronald Harding, appeared. His clothing was spattered with blood. Also visible through the open door was the other defendant, Fayann White, who was also dressed in clothes spattered with blood. The officers then entered the apartment and immediately arrested both defendants.

Homicide detectives were summoned to the scene in accordance with police procedure. Upon their arrival, some fifteen minutes later, the defendants were taken to police headquarters. The detectives, in the course of the next two hours, took photographs of the scene and seized the evidence which was in plain view. The items seized included a blood–stained housecoat and door knob, blood–stained wallpaper and sleeping bag, and alcoholic beverage containers. All these items were discovered in the room in which the defendants were originally found. The detectives also seized several knives from the kitchen sink.

The district court suppressed all of these items of evidence, holding that once the defendants had been removed and the premises secured no exigent circumstances existed to validate the warrantless seizure.

### I.

■ It is axiomatic that warrantless searches and seizures are presumptively invalid under the Fourth Amendment to the United States Constitution and Article II, section 7 of the Colorado constitution. *People v. Gurule*, 196 Colo. 562, 593 P.2d 319 (1978). A well–defined exception to this rule is the plain view doctrine, which holds that a warrant is not required to seize items discovered in plain view while conducting a legitimate investigation of criminal activity. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and *Gurule, supra*.

■ As stated in *Coolidge, supra*, plain view alone is never enough to justify the warrantless seizure of evidence. In addition to being in plain view, these further requirements must be met:

"* * * First, the police must be in a place where they are legitimately entitled to be. That is, the initial intrusion must be valid. Second, police cannot use the plain view doctrine as a pretext for a warrantless seizure of evidence they *expect* to uncover in their search. Finally, the officer seizing the evidence must have 'good reason to believe' that the exposed item is incriminating evidence, although it need not be 'illegal *per se*.' [citing cases]" *People v. Gurule, supra*.

### A.

■ Applying the doctrine to the present case, as to the items seized in the room in which the defendants were arrested, there is no question but that the criteria of the plain view exception were met. The original intrusion into the apartment, even though warrantless, was found valid by the district court and that finding is not challenged in this appeal. The items seized were in plain view. They were not in any way concealed. The discovery of the items was inadvertent during a legitimate homicide investigation. The police had not entered the apartment "expecting" to discover such evidence. The officers seizing the evidence had good reason to believe it incrimi-

nating. All the items except the alcoholic beverage containers had blood stains on them. The liquor containers could have had fingerprints of either the defendants or the victim or both.[1] Thus, there was good reason to believe they too were incriminating.[2]

### B.

Like the items mentioned above, the knives found in the kitchen sink were in plain view and were inadvertently discovered. There was good reason to believe them incriminating since the victim's throat had been slashed.

■ The only significant question is whether the original intrusion into the kitchen was valid. Contrary to the district court, we believe that the exigent circumstances which justified the original intrusion into the apartment also justified a further search of the premises for other possible suspects, victims, or weapons. *People v. Baca*, Colo., 600 P.2d 770 (1979). Under these circumstances, the police were legitimately entitled to enter the kitchen.

The record does not support the conclusion that there was a general search of the kitchen, as defendants claim. Only items in plain view were seized.[3] Drawers were not opened and closets were not systematically searched. The knives were properly seized under the plain view doctrine.

### II.

■ Defendants seek to distinguish this case from *Gurule, supra*, by showing that it was not the officers originally intruding into the apartment who seized the evidence in plain view. Defendants argue that we should require the homicide detectives to obtain a search warrant before seizing evidence since those detectives were not present during the original intrusion.

The original officers were following departmental procedure when they did not immediately seize the evidence in plain view. The procedure requires that they wait for detectives to accomplish that task. This procedure is designed to protect the integrity of evidence—to the benefit of both the prosecution and the accused. The entry of homicide detectives approximately fifteen minutes after the officers' entry into the apartment is no more than an actual continuation of a prior lawful entry by the original officers. *See Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).

Accordingly, the ruling of the district court is reversed.

---

1. There was strong evidence that both defendants had been drinking intoxicating beverage.

2. Defendants claim that since there were no exigent circumstances requiring the immediate seizure of the evidence in plain view a search warrant should have been required. This misperceives the test set forth in *Gurule, supra*. That test requires only that the officers be lawfully present. Exigent circumstances are not necessary to validate the seizure of evidence in plain view. Exigent circumstances were only required in this case to validate the

officers' original entry into the apartment. *See People v. Amato*, 193 Colo. 57, 562 P.2d 422 (1977).

3. The record indicates that the apartment was very small, consisting of a main room, bathroom, and kitchen. It is fairly inferable from the record that some and perhaps all of the six uninformed officers originally on the scene observed the evidence which was in plain view and subsequently seized by the homicide detectives.