The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Thomas Earl REYNOLDS, Defendant-Appellee.

No. 83SA346.

Supreme Court of Colorado, En Banc.

Dec. 5, 1983.

Robert R. Gallagher, Jr., Dist. Atty., Catherine DiSante, Deputy Dist. Atty., Littleton, for plaintiff-appellant.

Leonard M. Chesler, John S. Tatum, Denver, for defendant-appellee.

ERICKSON, Chief Justice.

This is an interlocutory appeal by the district attorney from a ruling of the district court of Arapahoe County which granted the defendant's motion to suppress photographs, video tapes, and diagrams of a murder scene which were obtained without a search warrant. We reverse the suppression order and remand with directions.

I.

On February 28, 1982, at approximately 3:00 a.m., the Aurora Police Department received a telephone call from the defendant's step-daughter. She told the police dispatcher that a gun had been fired during a domestic quarrel at her parent's home. She also related that her mother, Elaine Reynolds, had locked herself in the bedroom.

When the police officers arrived at the Reynolds' home, defendant answered the door and admitted the police officers. While one officer questioned the defendant, two other officers attempted to get Mrs. Reynolds to open the bedroom door. The defendant told the police officers to kick the door down because his wife had been shot. In response, the officers broke down the door to the bedroom and found Mrs. Reynolds' body on the bed. The defendant was then arrested.

A short time later, another police officer arrived at the house and the officer in charge ordered him to secure the remaining areas of the house to determine whether there might be other victims or suspects. The officer found an empty liquor bottle and notes written by the defendant in the kitchen and found a revolver in the den adjacent to the kitchen.

At 4:30 a.m., police officers from the criminal investigation laboratory photographed and video taped the body, liquor bottle, notes, and revolver. At the same time, extensive measurements were taken for

preparation of a diagram of the murder scene. At 7:00 a.m., the police obtained a search warrant and searched the Reynolds' home.

The defendant filed a motion to suppress his statements, the evidence seized during the investigation, and the photographs, video tapes, and diagrams.[1] The district court denied the motion to suppress the defendant's statements and the liquor bottle, notes, and revolver. The district court concluded that the emergency nature of the situation justified the entry into the bedroom and the search to secure the house. The district court also found that the liquor bottle, notes, and revolver were properly seized under the plain view exception. The district court, however, suppressed the photographs and measurements because the police acted without a search warrant.

II.

■ The sole issue on appeal is whether the Fourth Amendment requires police to obtain a search warrant before they can photograph, video tape, or diagram evidence otherwise admissible under the plain view exception. Warrantless searches and seizures are presumptively invalid under the Fourth Amendment to the United States Constitution and Article II, section 7 of the Colorado Constitution. *People v. Harding,* 620 P.2d 245 (Colo.1980); *People v. Gurule,* 196 Colo. 562, 593 P.2d 319 (1978). Three exceptions to the warrant requirement are applicable to the present case: the emergency, consent, and plain view doctrines.

■ The emergency doctrine is a variant of the exigent circumstances exception to the warrant requirement and will be invoked where facts exist which support a "colorable claim of emergency threatening the life or safety of another." *People v. Clements,* 661 P.2d 267, 271 (Colo.1983) (quoting *McCall v. People,* 623 P.2d 397, 402 (Colo.1981)); *see also People v. Amato,* 193 Colo. 57, 562 P.2d 422 (1977). An emergency search is strictly circumscribed by the

1. For the purpose of this opinion, photographs include video tapes and diagrams.

exigency which created its justification and cannot be used to support a general exploratory search. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *People v. Roark,* 643 P.2d 756 (Colo.1982). A search based on exigent circumstances requires the presence of an immediate crisis and the probability that assistance will be helpful. *People v. Amato, supra.* The police response must be strictly limited to that action necessary to respond to the exigency. *People v. Roark, supra; People v. Gomez,* 632 P.2d 586 (Colo.1981); *McCall v. People, supra.* In this case, after the police officers discovered the body, they were justified under the emergency doctrine ·in searching the premises for possible suspects, victims, or weapons. *People v. Roark, supra; People v. Harding, supra.*

■ A second exception to the Fourth Amendment warrant requirement, which the district court did not consider, is the consent doctrine. A voluntary consent to search waives the warrant requirement. *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Schecknloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Torand,* 622 P.2d 562 (Colo.1981); *People v. Billington,* 191 Colo. 323, 552 P.2d 500 (1976). Consent may be confined in scope to specific items, areas, or times. *People v. Torand, supra; People v. Billington, supra.* There is no question that the defendant voluntarily · consented both to the police coming into his house and to their kicking down the door to aid his wife.

■ When the police are legitimately on the premises pursuant to a valid consent, they may seize incriminating evidence in plain view. *People v. Torand, supra; People v. Towery,* 194 Colo. 486, 573 P.2d 104 (1978); *People v. Renfrow,* 172 Colo. 399, 473 P.2d 957 (1970). The same is true if the presence of the police is justified by the emergency doctrine. *People v. Clements, supra.*

■ The plain view doctrine provides that a warrant is not required to seize items discovered in plain view which police see while conducting a legitimate investigation of criminal activity. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *People v. Harding,* 620 P.2d 245 (Colo.1980); *People v. Gurule,* 196 Colo. 562, 593 P.2d 319 (1978). A plain view seizure is permissible when the following three requirements are satisfied. First, there must be a valid initial intrusion based on a warrant or on one of the exceptions to the warrant requirement. Second, the discovery of the evidence must be inadvertent. Finally, the officer must have present knowledge of facts which establish a reasonable nexus between the article to be seized and criminal behavior. *See Coolidge v. New Hampshire, supra; People v. Franklin,* 640 P.2d 226 (Colo.1982); *People v. Stoppel,* 637 P.2d 384 (Colo.1981); *People v. Harding, supra.*

The ·police were legitimately in the defendant's house and inadvertently discovered relevant evidence. The district court found that the police lawfully seized the liquor bottle, notes, and revolver under the plain view doctrine. The district court, however, ruled that the police were required to obtain a warrant before making measurements and photographing the evidence. We do not agree.

We see no reason for requiring the police to obtain a search warrant to photograph and measure, as part of an ongoing investigation, evidence which they lawfully seize under the plain view exception. The rationale behind the plain view exception to the warrant requirement is equally applicable when the police photograph evidence. In *Coolidge v. New Hampshire, supra,* the United States Supreme Court noted that the warrant requirement provides two distinct constitutional safeguards: First, a magistrate's scrutiny is intended to eliminate searches without probable cause; second, a search warrant prevents general exploratory searches. The Supreme Court concluded that the plain view exception does not conflict with either constitutional safeguard:

"As against the minor peril to Fourth Amendment protections, there is a major

gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it."

403 U.S. at 467–68, 91 S.Ct. at 2039; *see also People v. Stoppel, supra.* The application of the exclusionary rule in this case would be a needless inconvenience and would serve no purpose but to deprive the prosecution of reliable and probative evidence. *People v. Banks,* 655 P.2d 1384 (Colo.App.1982).

 A search warrant is not required where evidence discovered in plain view is seized as part of a continuing police investigation. *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *People v. Harding, supra; People v. Gurule, supra.* In *People v. Gurule,* a police officer observed a box of .22 caliber cartridges in a car parked near the scene of the homicide where a victim had been killed with a .22 caliber pistol. Instead of seizing the cartridges, he confirmed that the license plates were registered to the suspected assailant. At the instruction of his superiors, the police officer secured the area around the car and then seized the cartridges. We overruled the trial court which found that the officer lost the plain view justification for seizing the evidence by pausing to check out the ownership of the car and to secure the area. We held that "where ... the conclusion is unavoidable that seizure of evidence was part and parcel of discovering it in plain view, the warrantless seizure is valid." 196 Colo. at 565, 593 P.2d at 321; *see also People v. Harding, supra* (seizure of evidence by homicide detectives after being discovered by investigating officers was the continuation of prior lawful entry and did not require a search warrant). In our view, photographing the evidence, and recording the relevant crime scene dimensions approximately one hour and a half after discovery was part of an on-going lawful crim-

inal investigation and did not require a search warrant.

However, photographing evidence discovered in plain view cannot be used as the pretext for a general exploratory search. We are unable to determine from the record whether the photographs or measurements included more of the defendant's home than was justified under the plain view doctrine. Therefore, the district court's suppression order is reversed and the case is remanded for further proceedings to determine whether the police exceeded the scope of the plain view doctrine in taking photographs, video taping, and diagramming the crime scene.

DUBOFSKY and QUINN, JJ., dissent.

DUBOFSKY, Justice, dissenting:

I respectfully dissent.

First, I question whether this appeal concerns evidence which is a substantial part of the proof of the charge pending against the defendant. C.A.R. 4.1(a). By taking this interlocutory appeal, the People certify that the evidence which the district court suppressed—photographs, videotapes, and a diagram of the house—is a substantial part of the proof of the charge against the defendant. However, the district court did not suppress the gun, notes, whiskey bottle, blood-soaked sheets, etc. Moreover, the district court ruled that the officers who first entered the house could testify about what they observed.

Second, I believe that the district court exercised its discretion reasonably in suppressing evidence which was not essential and which was obtained by police criminal laboratory technicians prior to the issuance of a search warrant. There was no consent by the defendant or a resident of the house to a warrantless search of the premises for the purpose of making diagrams, photographs, or videotapes, nor were there any exigencies requiring such a search. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The house and its contents had been secured, awaiting the arrival of the search warrant. There was no need for the criminal laboratory technicians to

make the videotapes, photographs, and measurements at issue here without a search warrant.

Finally, the majority directs the district court to determine whether the police exceeded the scope of the plain view doctrine in taking photographs, videotaping, and diagraming the scene of the crime because the record, according to the majority, does not allow us to determine whether the photographs or measurements included more of the defendant's home than was justified under the plain view doctrine. Clearly, with respect to the measurements, the record discloses that the three-foot by five-foot diagram of the house depicts the entire house, and the officers' testimony does not indicate that the plain view doctrine would support the taking of such extensive measurements prior to the issuance of a search warrant. In addition, the record discloses that the officers rearranged the notes and opened the cylinder of the revolver for the purpose of taking photographs.

I would uphold the district court's suppression order.

I am authorized to say that QUINN, J., joins me in this dissent.