The **PEOPLE** of the State of Colorado,
Plaintiff-Appellee,

v.

Monte David **REGER,**
Defendant-Appellant.

Nos. 84CA1033, 85CA0063.

Colorado Court of Appeals,
Div. III.

Aug. 28, 1986.

Rehearings Denied Sept. 25, 1986.

Certiorari Denied (Reger) Jan. 20, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David R. Little, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Barbara S. Blackman, Chief Appellate Deputy, Denver, for defendant-appellant.

VAN CISE, Judge.

Defendant, Monte David Reger, appeals the judgments entered in two separate cases based on jury verdicts finding him guilty of second degree murder and crime of violence in the first case (the murder case), and guilty of two counts of possession of schedule I controlled substances and one count of possession of less than one ounce of marijuana in the second case (the drug case). Because in the drug case the sole issue raised on appeal concerns the denial of defendant's motions to suppress the same evidence as in the murder case, we consolidated the cases for review. We affirm both judgments.

Defendant and his wife, Mary Jo Reger, lived in a trailer in Rangely. On the afternoon of November 23, 1983, Mary Jo failed to appear for work at Rangely District Hospital. Co-workers became concerned over her absence and telephoned a neighbor to see if he knew where she was. He sent his son to the Reger's trailer at 5:30 p.m. to see if Mary Jo was there. When the son arrived, he knocked on the door twice but received no answer. However, he heard muffled voices, some movement inside the trailer, and a metal-on-metal sound.

Upon his son's report of these events, the neighbor called a co-worker of Mary Jo, and she proceeded to the Reger's trailer to investigate. She got no response when she knocked on the door. Concerned that the Regers might have been overcome by a gas leak, she called the police.

There was no initial response when Officer Wolf knocked on the door, but he heard a metallic scraping sound within. The door then opened a few inches and a male voice made an unintelligible statement. In answer to Officer Wolf's question, the man stated in a garbled voice that his wife was at the hospital, and the lights in the trailer went on and off quickly. Officer Wolf placed his hand inside the door. When the front door started to close on his hand, the officer reflexively pulled his hand out and the door opened six to ten inches. When the door came open, the officer noticed an unpleasant odor, which he associated with coagulated blood, emanating from the trailer. Officer Wolf then asked the person inside if he could come in and talk, and if he would turn on a light. The defendant then let in Officer Wolf and a back-up officer, C.W. Ivey.

Mary Jo Reger lay just inside the trailer door, dead as a result of gunshot wounds to the left arm, left abdomen, neck, and nose. A .22 Magnum rifle laying on the floor was picked up by Wolf and turned over to Ivey. Defendant was handcuffed, removed from the trailer, and placed in a police car. He was then transported to a hospital where examination revealed that a bullet had entered his lower jaw and passed into the frontal lobes of the brain. A craniotomy was performed, and the surgeon noted that the gunshot was consistent with a self-inflicted wound.

Police remained at defendant's trailer and extensively photographed the scene before the body was removed. One officer remained overnight while an affidavit for a search warrant was prepared. In the process of executing the warrant the next day, officers found and seized live ammunition and a candy tin containing psilocybin mushrooms and marijuana seeds and a blue pouch in which were blotter paper containing L.S.D., miscellaneous pills, and marijuana.

I.

Defendant contends on appeal that the trial court erred in denying his motion to suppress all evidence observed or seized from his home both before and after the issuance of the warrant, claiming the evidence was obtained in the absence of a

valid warrant or a bona fide emergency. We disagree.

Warrantless searches and seizures are presumptively invalid under the Fourth Amendment and Colo. Const. art. II, § 7. *People v. Bertine*, 706 P.2d 411 (Colo.1985); *People v. Harding*, 620 P.2d 245 (Colo. 1980). Two exceptions to the warrant requirement are applicable to the present case: the emergency and plain view doctrines.

■■■ The emergency doctrine may be invoked if facts exist which support a "colorable claim of emergency threatening the life or safety of another." *People v. Reynolds*, 672 P.2d 529 (Colo.1983). Here, the facts known to the police, including the victim's unexplained failure to appear at work and the unusual circumstances occurring when the trailer was visited by the neighbor's son and the co-worker, plus the events occurring when the officer sought entry were sufficient to support invocation of the emergency doctrine. Hence, the officer's entry into the trailer and his observation and seizure of evidence in plain view were proper even though at the time he had no warrant. *People v. Reynolds*, 672 P.2d 529 (Colo.1983).

■■■ The subsequent viewing of the victim's body in the trailer was not a search since the body was in plain view. At that point, the officer was in a lawful position from which to make his observations, and could also later legitimately examine, photograph, and seize those items discovered in plain view. *People v. Harding*, 620 P.2d 245 (Colo.1980). *See also People v. Unruh*, 713 P.2d 370 (Colo.1986).

■■■ The affidavit for the search warrant setting forth what had been observed in the trailer subsequent to defendant's arrest provided a legal basis to support the warrant. Therefore, the drugs seized pursuant to the warrant were properly admitted into evidence in both the murder case and the drug case.

II.

Defendant next contends the trial court abused its discretion in precluding testimony from defense witnesses Dr. Wittington and Norma Reger as a sanction for defense counsel's failure to comply with the court's discovery order. We disagree.

The information charging defendant with first-degree murder and crime of violence was filed January 4, 1984. In March, the prosecution filed motions for discovery, requesting defendant disclose the nature of his defense, his proposed witnesses, and any scientific or medical reports he intended to use at trial. On June 22, 31 days before the scheduled July 23 trial date, the prosecution renewed its discovery request and the court ordered defendant to complete the required disclosures by June 29. On July 6, eight days after the discovery deadline, defendant filed a theory of defense pleading outlining a "reasonable doubt" defense and reserving the right to call any witness endorsed by the People. On July 12, defendant filed an additional theory of defense statement proposing "evidence dealing with mental impairment as it deals with culpability in both specific and nonspecific intent crimes" and endorsing his family doctor, Dr. Braley, as a witness.

At a July 16 hearing, the prosecution argued that defendant's assertion of the mental impairment defense should not be allowed pursuant to § 16–8–103.5, C.R.S. (1985 Cum.Supp.) because it was pleaded so close to trial. The People also requested the court order a psychological examination of defendant, pursuant to § 16–8–103.5(4), C.R.S. (1985 Cum.Supp.). Defendant argued that the mental impairment defense differed from the mental impairment which is the subject of § 16–8–103.5. The court noted that, under § 16–8–103.5, defendant could plead not guilty by reason of mental impairment at a date later than arraignment "for good cause shown." However, the court declined to rule on the issue of defendant's presentation of a witness as to mental impairment until the trial began.

On July 17, defendant endorsed Dr. H.G. Wittington as a defense witness concerning

defendant's impaired mental condition. Wittington later testified at an *in camera* offer of proof that he had examined defendant from January 18–21 and had determined he had temporal lobe epilepsy, which involves seizures associated with changes in mood, confusion, and outbursts of violent activity. He also testified the temporal lobe epilepsy could have been caused by head injuries received as a child or by the self-inflicted gunshot in the head which took place the day the victim was killed.

Before jury selection on the first day of trial, July 23, defendant again requested the court permit him to present the testimony of Drs. Wittington and Braley. He also informed the court for the first time that he wished to call Norma Reger, defendant's mother, as a witness to present evidence raising the affirmative defense of impaired mental capacity. The court disallowed evidence concerning the theory of impaired mental condition and refused to permit either the prosecution or defense to present the testimony of witnesses endorsed after June 29.

■ The facts of this case are very similar to those in *People v. Hampton,* 696 P.2d 765 (Colo.1985), in which the supreme court remanded the matter to the district court for elaboration of factors it considered critical in excluding defendant's alibi evidence. In *Hampton,* the court noted that the exclusion of relevant and competent evidence offered in defense of a criminal charge is a severe sanction, implicating as it does the defendant's right to present a defense and ultimately the right to a fair trial. *See Hendershott v. People,* 653 P.2d 385 (Colo.1982), *cert. denied,* 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983). Nevertheless, the court in *Hampton* ruled that the sanction of exclusion remains a matter of judicial discretion within the limits of constitutional application, but the exercise of that discretion must be preceded by adequate inquiry into the circumstances of defendant's noncompliance and the effect of the exclusion.

■ The factors pertinent to the court's ultimate determination include the following: the reason for and the degree of culpability associated with the failure timely to respond to the prosecution's request for discovery; whether and to what extent the nondisclosure prejudiced the prosecution's opportunity effectively to prepare for trial; whether events occurring subsequent to the defendant's noncompliance mitigate the prejudice to the prosecution; whether there is a reasonable and less drastic alternative to the preclusion of the evidence; and any other relevant factors arising out of the circumstances of this case. *People v. Hampton, supra.*

■ Crim.P. 16 requires the defendant to disclose his theory of defense and proposed witnesses. Additionally, § 16-8-103.5, in general, requires disclosure of the defense of impaired mental condition at the time of arraignment. Defendant did not show any good cause excusing failure to comply with these rules. In fact, defendant was examined by Dr. Wittington six months prior to trial and at a time when he was represented by counsel.

On the other hand, the prosecution admitted it was aware of the *possibility* of a defense of impaired mental condition before trial. An investigator in the district attorney's office testified that in April he had contacted Dr. Braley, defendant's doctor since childhood, and had been informed in general terms of defendant's psychiatric history. However, the defendant only declared his intention to use a defense of impaired mental condition just before trial. This uncertainty hindered pretrial preparation.

Defendant claims the prosecution cannot argue it was caught by surprise as to the theory of the defense because the prosecution did not request a continuance. We find no authority for that proposition.

In this case there were no events occurring after defendant's noncompliance which mitigated the prejudice to the prosecution. A less drastic alternative, continuance of the trial, could have remedied some of the harm by permitting further preparation. However, we find no abuse of the trial

court's discretion in deciding to preclude the impaired mental condition defense instead of continuing the trial.

### III.

Defendant next contends the trial court abused its discretion in admitting three of the People's exhibits. We disagree.

The first exhibit at issue was a handwritten note from defendant to his father which contained the word "depressed" above the statement "couldn't face another divorce." Defendant's father died before trial, and a police officer testified defendant's father gave him the note two days after the offense. The prosecution offered the note as evidence of defendant's state of mind after the offense. A handwriting expert testified the note was written by defendant based on the comparison handwriting exemplars in the other two challenged exhibits.

The court considered the note's admissibility at two *in camera* hearings, and ordered the prosecution to delete certain statements referring to drugs before admitting the note into evidence. The same references also were deleted from the handwriting exemplars. Therefore, it is evident the court carefully considered the relevance and potential for prejudice associated with the exhibits, as prescribed in CRE 403. We find no abuse of discretion in the court's decision to admit these exhibits. *See People v. Rubanowitz*, 688 P.2d 331 (Colo.1984).

### IV.

Defendant next contends his sentence on the second degree murder conviction violates equal protection of the law because the aggravated sentence is premised on a violent crime finding which duplicates an element of the substantive offense. *People v. Haymaker*, 716 P.2d 110 (Colo.1986) expressly holds that there is no violation of equal protection in these circumstances. That ruling is dispositive.

### V.

Defendant further contends the trial court abused its discretion in imposing a sentence of 20 years on the second degree murder conviction, claiming mitigating circumstances support a sentence at the lower end of the range for a class 2 felony. A review of the sentencing hearing shows the court allowed the defendant to make a statement, and the court considered the circumstances of the offense and the character of the accused. The sentence imposed was slightly above the middle of the available sentencing range. *See* §§ 16–11–309 and 18–1–105(9)(a)(I), C.R.S. (1985 Cum. Supp.). We find no abuse of discretion in the court's sentence and, therefore, no basis for modification thereof. *People v. Beland*, 631 P.2d 1130 (Colo.1981).

Judgments affirmed.

KELLY and BABCOCK, JJ., concur.