The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 5, 2021

## 2021COA103

### No. 18CA0480, *People v. Curtis* — Election Law — Offenses Related to Mail Ballots; Crimes — Forgery

A division of the court of appeals considers whether, under *People v. Bagby*, 734 P.2d 1059, 1061 (Colo. 1987), the legislature intended to limit prosecution for conduct related to mail ballots to the mail ballot offense statute, section 1-13-112, C.R.S. 2020. The division concludes it did not, and, therefore, the prosecution had discretion to charge the defendant with a mail ballot offense as well as felony forgery under section 18-5-102(1)(d), C.R.S. 2020.

The division also concludes that (1) the defendant's convictions for forgery and a mail ballot offense do not violate his right to equal protection; (2) felony forgery is not a lesser included offense of misdemeanor mail ballot offense; and (3) the prosecutor did not commit reversible misconduct.

COLORADO COURT OF APPEALS                                    **2021COA103**

Court of Appeals No. 18CA0480
Weld County District Court No. 17CR245
Honorable Julie C. Hoskins, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Steven Curtis,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE DUNN
Fox and Pawar, JJ., concur

Announced August 5, 2021

Philip J. Weiser, Attorney General, John T. Lee, Senior Assistant Attorney
General, Kevin E. McReynolds, Senior Assistant Attorney General, Denver,
Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1　　Defendant Steven Curtis tried to vote twice in the November 2016 general election.  In addition to his mail ballot, Curtis also filled out his ex-wife's mail ballot, forged her signature on the ballot envelope, and mailed it to the Weld County Clerk and Recorder.  For this, a jury convicted Curtis of felony forgery, section 18-5-102(1)(d), C.R.S. 2020, and a misdemeanor mail ballot offense, section 1-13-112, C.R.S. 2020.

¶ 2　　Curtis appeals his forgery conviction, contending that the prosecution lacked the discretion to charge him under the general forgery statute and, instead, could charge him only under "the more specific" mail ballot offense statute.  Because we disagree, we reject Curtis's contention that we must vacate his forgery conviction.  And because we are unpersuaded by Curtis's other challenges, we affirm.

## I.　　Background

¶ 3　　Curtis and his wife Kelly ended their marriage in May 2016. Kelly later moved to South Carolina.  Before the November 2016 general election, the Weld County Clerk and Recorder's office sent Kelly's mail ballot to the home she once shared with Curtis.  Soon

after, Curtis filled out, signed, and mailed both his and Kelly's ballots to the Weld County Clerk.[1]

¶ 4     Meanwhile, Kelly contacted the Weld County Clerk's office to obtain an absentee ballot but was told that she "had already voted" and that her ballot "was sitting right there." Kelly explained that she hadn't filled out a ballot or given anyone permission to do so on her behalf. She later confirmed that the signature on the ballot envelope wasn't hers.

¶ 5     When asked, Curtis denied signing Kelly's ballot. Unconvinced, the prosecution obtained a court order requiring Curtis to provide DNA and handwriting samples. DNA testing showed that Curtis had sealed Kelly's ballot return envelope, and a handwriting expert concluded that Curtis had filled out the return address on the envelope and signed Kelly's name.

¶ 6     The prosecution charged Curtis with forgery and a mail ballot offense. At trial, Curtis implicitly acknowledged that he filled out

---

[1] Curtis signed Kelly's name on the "Voter's Signature" line on her ballot return envelope. *See* § 1-7.5-103(7), C.R.S. 2020 (defining "[r]eturn envelope" as "an envelope that is printed with spaces for the name and address of, and a self-affirmation to be signed by, an eligible elector voting in a mail ballot election . . . .").

and signed Kelly's ballot but asserted an involuntary intoxication affirmative defense. He argued that his chronic diabetes resulted in blood sugar "blackouts" that made him confused and unable to remember most of October 2016. As a result, he argued that he "did not possess the mental state [necessary] to commit or complete" the charged offenses.

¶ 7 The jury rejected the involuntary intoxication defense and convicted Curtis as charged. The trial court sentenced Curtis to probation and community service.

## II. The *Bagby* Challenge

¶ 8 Relying on *People v. Bagby*, 734 P.2d 1059, 1061 (Colo. 1987), Curtis first contends that the prosecution lacked authority to charge him under the general forgery statute because the legislature intended to limit prosecution for conduct related to mail ballots to the more specific mail ballot offense statute. We disagree.

## A. Waiver and Preservation

¶ 9 We first reject the People's contention that Curtis waived his *Bagby* challenge because it is a challenge to the information that must be raised before trial under Crim. P. 12(b)(2).

¶ 10 An information may be defective in either form or substance. *See People v. Williams*, 984 P.2d 56, 63 (Colo. 1999). Objections based on defects to the form of the information must be made before trial or they are waived. Crim. P. 12(b)(2). But a defect in substance is jurisdictional and may be raised at any time. *See Williams*, 984 P.2d at 63-64. A substantive defect requires "dismissal of the charge" or renders "void any conviction entered on such charge." *Id.*

¶ 11 Although the People contend that Curtis's claim "raise[s] an alleged defect in the charging information," they don't point to any specific form defect in the information. *See People v. Davis*, 2017 COA 40M, ¶ 9 (concluding Crim. P. 12(b) doesn't apply where the defendant's claim didn't involve a defect in the charging document).

¶ 12 Nor is any form defect self-evident. The information charged Curtis with two crimes based on the same set of facts. That's entirely proper. *See* § 18-1-408(7), C.R.S. 2020. So we see "[n]othing on the face of the charging document" that "revealed a defect to which [Curtis] could have properly objected." *People v. Wester-Gravelle*, 2020 CO 64, ¶ 23; *see also People v. Zadra*, 2013 COA 140, ¶¶ 65-66 (recognizing that federal appellate courts

4

uniformly apply Fed. R. Crim. P. 12(b)(2) "where the defect is apparent from the face of the charges") (citations omitted), *aff'd on other grounds*, 2017 CO 18, ¶ 18.

¶ 13     To the extent Curtis's claim can be characterized as an objection to the information at all, it appears to be a substantive one.  Indeed, if Curtis is correct that the mail ballot offense statute abrogates the general forgery statute, then the prosecution "lacked authority" to charge him with forgery.  Thus, should he prevail, we'd have to vacate the forgery conviction.  *See Williams*, 984 P.2d at 64 (substantive defect renders void any conviction entered on such charge); *People v. Moore*, 200 Colo. 481, 485, 615 P.2d 726, 729 (1980) ("[W]hen an information fails to charge a crime, the court acquires no jurisdiction.").  Such an objection doesn't need to be brought before trial.  *See Williams*, 984 P.2d at 63-64.

¶ 14     Even if we assume Curtis's objection could be classified as a form objection, we see nothing in the record — and the People point to nothing — suggesting Curtis's failure to raise the challenge under Crim. P. 12(b) was intentional, rather than an oversight.  *See People v. Rediger*, 2018 CO 32, ¶ 39 (waiver is the intentional relinquishment of a known right).  Because our supreme court

construes waivers under Crim. P. 12(b) as it does other waivers, *see Wester-Gravelle*, ¶ 26, and "indulge[s] every reasonable presumption against waiver," *Rediger*, ¶ 39 (citation omitted), absent any "evidence that [Curtis] intended to relinquish the right in question," *Phillips v. People*, 2019 CO 72, ¶ 33, we can't conclude that Curtis waived his claim that the prosecution lacked authority to charge him with forgery. *See Wester-Gravelle*, ¶ 26 (concluding the defendant's failure to demand a prosecutorial election or request a modified unanimity instruction under Crim. P. 12(b) constituted a forfeiture); *see also Zadra*, ¶¶ 68, 70 (reviewing multiplicity challenge for plain error where the failure to bring the motion under Crim. P. 12(b) "was a result of oversight").

¶ 15    All this said, we agree with the People that Curtis didn't preserve his *Bagby* challenge. Thus, if we agree error occurred, we won't reverse unless the error is plain. *See Rediger,* ¶ 47.

B.    Legal Principles and Standard of Review

¶ 16    When a defendant's actions violate more than one criminal statute, the prosecution ordinarily may charge the defendant under each statute. *See* § 18-1-408(7); *see also People v. Clanton*, 2015 COA 8, ¶ 10. In that scenario, it's for the prosecution "to determine

what charges to file." *People v. Stewart,* 55 P.3d 107, 118 (Colo. 2002); *see also People v. Smith,* 938 P.2d 111, 115 (Colo. 1997) ("Ordinarily, a prosecutor has discretion to charge any applicable offense.").

¶ 17     But in rare circumstances the prosecution may be barred from charging a defendant under a general criminal statute when the legislature evinces a "clear" intent to limit prosecution to a more specific statute. *Smith,* 938 P.2d at 115-16; *accord Bagby,* 734 P.2d at 1061; *Clanton,* ¶ 11.

¶ 18     To determine whether the legislature clearly intended to limit prosecution to a more specific statute, courts consider whether (1) the specific statute invokes the full extent of the state's police powers; (2) the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area; and (3) that act carefully defines different types of offenses in detail. *See Bagby,* 734 P.2d at 1062; *Smith,* 938 P.2d at 116; *People v. Warner,* 930 P.2d 564, 568 (Colo. 1996).

¶ 19     Applying the *Bagby* factors, our supreme court has found only two instances where the legislature "intended the specific

7

provisions" of a statute "to supplant the more general provisions" of the criminal code. *Warner*, 930 P.2d at 568. First, in *Bagby*, the supreme court concluded that the legislature intended to require the offense of falsely completing a liquor license application to be prosecuted under the Liquor Code and not the general criminal code. *Bagby*, 734 P.2d at 1062. And later, in *Warner*, the court reached a similar conclusion regarding the Limited Gaming Act of 1991, holding that the legislature intended that the use of a device to remove tokens from a slot machine be prosecuted exclusively under the Limited Gaming Act. *See Warner*, 930 P.2d at 568.

¶ 20　　*Bagby* and *Warner* reached their conclusions, in part, by finding that the Liquor Code and the Limited Gaming Act were comprehensive regulatory schemes. Beyond that, however, the supreme court relied significantly on the legislative declarations in the Liquor Code and the Limited Gaming Act. Those respective declarations each invoked the "full extent" of the state's police powers. *See Bagby*, 734 P.2d at 1062 (holding the Liquor Code's legislative declaration expressly invoked the full extent of the police powers); *Warner*, 930 P.2d at 568 (concluding that the Limited

8

Gaming Act's legislative declaration invoked the full extent of the state's police powers).

¶ 21    We review de novo to determine whether the legislature intended a specific statute to abrogate the general criminal code. *See Clanton*, ¶ 13.

### C.    The Mail Ballot Offense Statute Doesn't Supplant the General Forgery Statute

¶ 22    As relevant here, a person commits forgery

> if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
> . . . .
> A public record or an instrument filed or required by law to be filed or legally fileable in or with a public office or public servant.

§ 18-5-102(1)(d).

¶ 23    By contrast, a person commits a mail ballot offense if, among other conduct, he "falsely makes, alters, forges, or counterfeits any mail ballot before or after it has been cast." § 1-13-112.

¶ 24    Curtis contends he could only be charged with the latter offense because the legislature intended that the more specific mail ballot offense statute supplant the general criminal code. To get

9

there, he asserts that the mail ballot offense statute is part of a broader, comprehensive act that he calls the "Elections Offense Act." (Curtis identifies this "Act" as all of title 1, article 13 of the Colorado Revised Statutes.) He then asserts that, in enacting that "Act," the legislature clearly intended to "invoke the State's police powers." But unlike the Liquor Code and the Limited Gaming Act, we don't see a legislative declaration in article 13 evincing such an intent and Curtis doesn't point us to one. *See People v. Stansberry*, 83 P.3d 1188, 1190 (Colo. App. 2003) (holding that the prosecution could bring charges under the general forgery statute where the legislative declaration in the motor vehicle tax statute contained no "broad invocation of police powers"); *see also Clanton*, ¶ 24 (rejecting *Bagby* challenge that argued the Colorado Employment Security Act supplanted the general forgery statute).

¶ 25 Recognizing this gap, Curtis urges us to discern a clear legislative intent to supplant the general criminal code from the "statutory provisions" in that "Act." But even assuming this suggested approach is consistent with *Bagby* and *Warner*, Curtis doesn't direct us to any "statutory provision" in article 13 that invokes the state's police powers, expressly or otherwise. Nor does

he direct us to any particular provision from which we could infer a clear legislative intent to limit the prosecution's discretion to bring forgery charges.

¶ 26 Looking past article 13, of more interest to us is the Mail Ballot Election Act and its legislative declaration. *See* Ch. 43, sec. 2, § 1-13-112, 1990 Colo. Sess. Laws 318; *see also* § 1-7.5-101, C.R.S. 2020 (identifying short title of the act). Though Curtis doesn't mention it, the mail ballot offense statute was enacted through this Act. The Act's legislative declaration, however, doesn't invoke the state's police powers or otherwise help Curtis. *See* § 1-7.5-102, C.R.S. 2020. Rather, it declares simply that "mail ballot elections are cost-efficient and have not resulted in increased fraud," Ch. 43, sec. 1, § 1-7.5-102, 1990 Colo. Sess. Laws 314, and that, "by enacting this article, the general assembly hereby concludes that it is appropriate to provide for mail ballot elections under specified circumstances," § 1-7.5-102(1). Such a narrow declaration is nowhere close to the broad legislative declarations that *Bagby* and *Warner* concluded showed a clear legislative intent to invoke the full extent of the state's police powers and supplant

11

the general criminal code. *See Bagby*, 734 P.2d at 1062; *Warner*, 930 P.2d 568.

¶ 27 Because the Mail Ballot Election Act doesn't satisfy the first *Bagby* factor — invocation of the full extent of the state's police powers — we needn't consider the remaining two factors.

¶ 28 All told, we conclude the prosecution had discretion to charge Curtis under the forgery statute.

### III.  Equal Protection

¶ 29 Curtis next contends that the forgery conviction violates his right to equal protection under the law. This is so, he argues, because the forgery statute fails to provide an intelligible standard by which to differentiate the conduct it proscribes from the conduct proscribed by the mail ballot offense statute. We disagree.

### A.  Legal Principles and Standard of Review

¶ 30 The Colorado Constitution implicitly guarantees a defendant equal protection under the law. *Stewart*, 55 P.3d at 114; *see also* Colo. Const. art. II, § 25. "If a criminal statute proscribes different penalties for identical conduct, and a defendant is convicted under the statute imposing the harsher penalty, then the defendant's right to equal protection is violated unless there are reasonable

12

differences or distinctions between the statutes at issue." *People v. Blue*, 253 P.3d 1273, 1279 (Colo. App. 2011); *see also Stewart*, 55 P.3d at 114.

¶ 31    To determine whether two statutes prohibit identical conduct, we compare the statutory elements. *See Campbell v. People*, 73 P.3d 11, 14 (Colo. 2003); *Blue*, 253 P.3d at 1279. "If the elements differ qualitatively (and not merely semantically), such that one statute requires proof of an element that the other does not, there is no equal protection violation." *Clanton*, ¶ 27; *see also Blue*, 253 P.3d at 1279.

¶ 32    We review de novo whether two statutes prohibit the same or different conduct. *See People v. Lee*, 2020 CO 81, ¶ 11; *accord Clanton*, ¶ 28.

### B.    The Forgery and Mail Ballot Offense Statutes Require Different Mens Reas

¶ 33    To review, as relevant here, forgery requires proof that (1) a person; (2) with intent to defraud; (3) falsely makes, completes, alters, or utters a written instrument; (4) which was or was purported to be, or which was calculated to become or to represent if completed; (5) a "public record or an instrument filed . . . or

legally fileable in or with a public office or public servant . . . ." § 18-5-102(1)(d).[2]

¶ 34   By comparison, a mail ballot offense requires proof that a person (1) falsely made, altered, forged, or counterfeited; (2) any mail ballot; (3) "before or after it ha[d] been cast . . . ." § 1-13-112.

¶ 35   Curtis's equal protection argument is premised on the assumption that "both statutes provide for the same mens rea." But they don't.  Forgery requires "intent to defraud" while a mail ballot offense doesn't.  *See People v. Billington*, 191 Colo. 323, 327, 552 P.2d 500, 503 (1976) ("An essential element of the crime of second-degree forgery is intent to defraud . . . .").  This difference between the statutes is "real in fact."  *Stewart*, 55 P.3d at 114.  It makes forgery a specific intent crime, *see* § 18-1-501(5) C.R.S. 2020, and requires the prosecution to present evidence that a defendant has an "intent to defraud" someone or something.  *See also* Black's Law Dictionary (11th ed. 2019) (defining "defraud" as "[t]o cause injury or loss to (a person or organization) by deceit"); *see also* Webster's Third New International Dictionary 593 (2002)

---

[2] The legislature expressly defined "falsely complete."  *See* § 18-5-101(3), C.R.S. 2020.

14

(Defraud means "to take or withhold from (one) some possession, right, or interest by calculated misstatement or perversion of truth, trickery, or other deception."). Because "a different mens rea is required, different conduct is being punished[] and there is no equal protection violation." *People v. Reynolds*, 194 Colo. 543, 547, 575 P.2d 1286, 1290 (1978).

¶ 36　　To the extent Curtis asks us to import an "intent to defraud" element into the mail ballot offense statute, we decline to do that. Had the legislature intended to make a mail ballot offense a specific intent crime, it would have done so. *E.g.*, *People v. Moseley*, 193 Colo. 256, 262, 566 P.2d 331, 335 (1977) (holding that "where a particular specific intent is included as an element of an offense, the legislature has done so expressly" and concluding, based on the legislature's silence, that robbery "requires no specific intent"); *see also Bates v. United States*, 522 U.S. 23, 29 (1997) (declining to read an "intent to defraud" element into a criminal statute and

explaining that courts "ordinarily resist reading words or elements into a statute that do not appear on its face").[3]

¶ 37     That's not to say the mail ballot offense statute has no mens rea (an issue neither party asks us to resolve and on which we express no opinion); rather, we simply conclude it doesn't include an intent to defraud.

¶ 38     We also reject Curtis's assertion that the statutes prohibit the same actus reus.  Without relying on principles of statutory construction, Curtis asserts that "falsely . . . forges" (as used in the mail offense ballot statute) means the same thing as "falsely complete" (as used in the forgery statute).  But the legislature specifically defined "falsely complete."  *See* § 18-5-101(3)(a), C.R.S. 2020.  By contrast, the mail ballot offense statute doesn't define

---

[3] In a footnote, Curtis observes that the prosecutor argued at trial that it "could be inferred" that the mail ballot offense statute shared the same mens rea as forgery by considering section 1-13-106, C.R.S. 2020 — a different provision in the same article that cross-references the felony forgery statute.  Curtis doesn't further develop this observation or explain how it informs his equal protection argument.  *See People v. Durapau*, 280 P.3d 42, 49 (Colo. App. 2011) (declining to address undeveloped arguments).  To the extent the supreme court's recent decision in *People v. Rojas*, 2019 CO 86M, ¶ 14, which construes a different statute with language similar to section 1-13-106, bears on this observation, Curtis doesn't make that argument and it's not before us.

"forges." Rather, it includes the term "forges" alongside "makes, alters, . . . or counterfeits." *See* § 1-12-113. We therefore interpret "forges" for purposes of the mail ballot offense statute consistently with its plain meaning as informed by its companion terms. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 195 (2012) ("When several nouns or verbs or adjectives or adverbs — any words — are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar."). Doing that leads us to conclude that in this statutory context, "forges" simply means "to make or imitate falsely." *See* Webster's Third New International Dictionary at 891.[4]

¶ 39    For these reasons, we conclude Curtis's convictions for forgery and a mail ballot offense don't violate his right to equal protection.

---

[4] Curtis switches gears in his reply brief and argues not that "forge" equates to "falsely complete" but, rather, that by using the term "forge" the legislature intended to import the criminal elements of felony forgery, including an "intent to defraud," into the mail ballot offense statute. We will not consider arguments first raised in a reply brief. *See People v. Hall*, 59 P.3d 298, 301 (Colo. App. 2002).

## IV. Merger

¶ 40  Curtis next contends that felony forgery is a lesser included offense of a misdemeanor mail ballot offense and that the district court erred by failing to merge the convictions and vacate the forgery conviction. We disagree.

### A. Legal Principles and Standard of Review

¶ 41  The United States and Colorado Constitutions prohibit multiple punishments for the same offense. *See Page v. People,* 2017 CO 88, ¶ 8. Thus, a defendant may not be convicted of two offenses for the same conduct if "[o]ne offense is included in the other." § 18-1-408(1)(a).

¶ 42  To determine whether "an offense is a lesser included offense of another offense," we consider whether "the elements of the lesser offense are a subset" of those of the greater, "such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Reyna-Abarca v. People,* 2017 CO 15, ¶ 64.

¶ 43  We review de novo whether an offense is a lesser included offense of another. *People v. Thomas,* 2020 COA 19M, ¶ 30 (*cert. granted* Sept. 28, 2020).

## B. Forgery is not a Lesser Included Offense of a Mail Ballot Offense

¶ 44 For the same reason Curtis's equal protection argument is unavailing, so too is his merger argument. That's because Curtis's merger argument again hinges on his assertion that the mail ballot offense statute requires "the same mens rea — intent by the defendant to defraud" as the forgery statute. As already explained, however, the mail ballot offense statute doesn't require an "intent to defraud." Thus, the prosecution may prove a mail ballot offense without also proving forgery. Which is to say forgery is not a lesser included offense of a mail ballot offense. *See Reyna-Abarca*, ¶ 64.

¶ 45 While perhaps more expected, Curtis doesn't argue that his mail ballot offense conviction merges into his forgery conviction. We therefore don't consider whether it does. *See, e.g., Galvan v. People*, 2020 CO 82, ¶ 45 (The party presentation principle "relies on the parties to frame the issues to be decided and assigns to courts the role of neutral arbiters of the matters raised."); *accord United States v. Sineneng-Smith*, 590 U.S. ___, ___, 140 S. Ct. 1575, 1579 (2020).

¶ 46     We conclude the district court properly declined to merge Curtis's forgery conviction into his mail ballot offense conviction.

## V.     Prosecutorial Misconduct

¶ 47     Curtis last contends that the prosecutor committed reversible misconduct during closing and rebuttal closing argument.  We disagree.

### A.     Legal Principles and Standard of Review

¶ 48     A prosecutor has wide latitude to argue based on facts in evidence and reasonable inferences drawn from those facts, as well as to respond to the defendant's arguments.  *People v. Maloy*, 2020 COA 71, ¶ 61.  But a prosecutor may not "make remarks for the purpose of denigrating the defense."  *People v. Collins*, 250 P.3d 668, 678 (Colo. 2010); *see also People v. Welsh*, 176 P.3d 781, 788 (Colo. App. 2007).  We evaluate improper argument claims in the context of the argument as a whole and in light of the evidence presented.  *People v. Munsey*, 232 P.3d 113, 123 (Colo. App. 2009).

¶ 49     We engage in a two-step analysis to review prosecutorial misconduct claims.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we evaluate whether the prosecutor's conduct was improper based on the totality of the circumstances.  *Id.*  Second, if

it was, we determine whether the conduct warrants reversal under the applicable standard.  *Id.*; *People v. Robinson*, 2019 CO 102, ¶ 18.

¶ 50    Because Curtis didn't object to the prosecutor's arguments, we review for plain error.  *See Robinson*, ¶ 19.

B.    The Prosecutor Didn't Denigrate Curtis's Defense Theory

¶ 51    Curtis defended on the theory that, due to his diabetes and related health issues, he was "impaired" and therefore "did not possess the mental state to commit" the charged crimes.  In support of this defense, Curtis presented medical experts to discuss diabetic episodes and the impact of uncontrolled blood sugar, as well as family members that testified to their observations of Curtis's diabetic episodes.

¶ 52    And the jury heard directly from Curtis who detailed his long-standing diabetic condition, prior hypoglycemic episodes, and specific health challenges during October 2016.  Curtis also explained that after he learned about the DNA and handwriting analysis, he had a "vague" memory of injecting insulin late one evening and seeing a ballot in the trash when he went to dispose of

his needle.  But he testified he had no memory of signing or mailing his ex-wife's ballot.

¶ 53    In closing argument, the prosecutor argued Curtis "knew exactly what he was doing" and that "when he realized how provable the crimes were, he grabbed on to the only thing that he could[,] and he has been trying to sell that story ever since."  The prosecutor later used the term "story" roughly a half dozen times in closing and rebuttal closing when discussing Curtis's version of events.

¶ 54    Curtis didn't object at trial, yet he now argues that the prosecutor improperly denigrated his defense theory by using the word "story" when discussing his account of what happened.  But Curtis testified and put his credibility at issue.  It's proper for a prosecutor to argue — based on reasonable evidentiary inferences — why the jury should or shouldn't believe a witness.  *Domingo-Gomez v. People*, 125 P.3d 1043, 1050 (Colo. 2005); *see also Martinez v. People*, 244 P.3d 135, 141 (Colo. 2010).

¶ 55    The prosecutor did that here.  Read in context, the references to Curtis's "story" were tied directly to the evidence.  They were not personal attacks on Curtis or his counsel.  They didn't imply Curtis

22

or his counsel acted in bad faith. They weren't dressed up with any inflammatory adjectives or adverbs. Rather, the comments were part of the argument explaining why — based on the evidence — the jury shouldn't believe Curtis's account of what happened. *See Collins*, 250 P.3d at 678 (The prosecutor's comment that the defense counsel's theory of reasonable doubt was "absurd" was not improper but "merely a response to defense counsel's assertions that the jury could not find defendant guilty beyond a reasonable doubt."); *cf. People v. Serra*, 2015 COA 130, ¶ 88 (The prosecutor's "statements . . . that [the defendant] was making up a story to suit his 'selfish, narcissistic needs' were . . . improper" because they "impl[ied] the defendant ha[d] a bad character" and thus distracted the jury's attention away from the evidence.).

¶ 56    Thus, in this closing argument, the prosecutor's comments on Curtis's version of events were proper.

C.    The Prosecutor's Comments Weren't Otherwise Improper

¶ 57    We are equally unpersuaded with Curtis's contention that the prosecutor's closing argument "improperly transformed" his constitutional rights into a "burden on his credibility."

23

¶ 58    Though he doesn't say so directly, Curtis appears to contend the prosecutor made an improper generic tailoring argument. A generic tailoring argument "occur[s] when the prosecution attacks the defendant's credibility by . . . drawing the jury's attention to the defendant's presence at trial and his resultant opportunity to tailor his testimony" absent support in the record. *See Martinez*, 244 P.3d at 141. Curtis, however, doesn't direct us to any portions of the closing argument where the prosecutor did that. Nor do we see a generic tailoring argument.

¶ 59    To the extent Curtis is upset that the prosecutor made a specific tailoring argument when commenting that Curtis only "remembered" seeing his ex-wife's ballot after learning about the DNA and handwriting analysis, that argument is directly tethered to Curtis's testimony and is proper. *See id.* (noting prosecutors may "make specific tailoring arguments when they are tied to the evidence in the record").

¶ 60    Curtis also argues that this same statement — that he "remembered" seeing his ex-wife's ballot after he was presented with the evidence against him — was an improper comment on his "right to the disclosure of evidence material to his defense" and to

"confront the prosecution's evidence." As we understand it, Curtis suggests that, because it's improper for a prosecutor to comment on a defendant's right to remain silent, it's likewise improper for a prosecutor to comment on a defendant's other constitutional rights.

¶ 61 Curtis, of course, didn't remain silent, and he doesn't explain how the prosecutor improperly commented on any particular constitutional rights. Instead, he appears to simply take issue with the prosecutor's argument that cast doubt on his version of events. Commenting on witness credibility, however, is fair. *See Domingo-Gomez*, 125 P.3d at 1050.

¶ 62 We conclude the prosecutor's comments were proper.

## VI. Conclusion

¶ 63 We affirm the judgment of conviction.

JUDGE FOX and JUDGE PAWAR concur.